Mr. Justice Montgomery
delivered the opinion of the Court:
This cause was certified here for hearing in the first instance. A brief statement of the material facts seems desirable.
In the year 1880, one Benjamin F. Bigelow purchased two hundred shares of the capital stock of each of defendant mining corporations, paying therefore $1,500, and taking the certificates in his own name.
In June, 1882, the defendant bank sued out a writ of attachment against Bigelow, which writ was placed in the *349 hands of defendant, Henry, then Marshal of the District of Columbia, and he at once levied the same on certain personal property, at the same time seizing and taking possession of said certificates, which possession he has ever since had and now has.
On the 16th day of February, 1885, the bank recovered in said suit a personal judgment against Bigelow for more than $20,000. No execution has issued and the judgment remains wholly unsatisfied.
Two days after the attachment suit was begun Mrs. Bigelow conveyed to Mr. Duncanson her equity of redemption in two parcels of real estate, and within a few months thereafter Mr. Bigelow executed and delivered to Mr. Duncanson a paper purporting to be an absolute assignment of the certificates and stock above mentioned, and very shortly thereafter he assigned to him some other stock certificates. Both parcels of land were afterwards sold at trustees’ sale; Duncanson bid in one and perfected nominal title in himself and realized a sum of money on the sale of the other parcel. He has never disposed of any of the stock.
On the 27th of June, 1885, Mr. Duncanson filed the original bill in this cause, in which he prays that defendant, Henry, be directed to deliver the stock certificates so signed by him to Miss Duncanson, and that the defendant corporation be directed to cancel the same and issue new ones to him.
The bank answered and also filed a cross-bill, in which bill it prayed for a reference to the auditor to ascertain how much was its due from Bigelow. That “ all necessary accounts” might be taken “inquiries made and directions given,” and that the “ alleged assignment ” of the stock and certificates in dispute, by Bigelow to Duncanson, might be declared void.
June 6, 1888, Mr. Burr petitioned to be “permitted to become a party defendant * * * and to have an opportunity to establish his claim and title to said stock.” On *350 the same day his petition was granted, and thereafter by consent of all parties who appeared in the cause, such petition was treated as his answer and cross-bill.
None of the other defendants answered, and in due time testimony was taken on behalf of Mr. Duncanson, Mr. Burr and the bank, respectively. It may be well to suggest here that at the argument, as well as in the briefs of counsel, it seems to have been assumed that another cause, which was on the 22d day of May, 1885, instituted on behalf of the bank, „by the filing of its bill in equity against Bigelow, Henry and others, was also before us for disposition, and such assumption has undoubtedly led to some confusion as to what issues and whose interests are really involved here, but plainly that old cause is not before us.
In the first place it is not at issue, and in the next it has not been certified here, and it hardly need be said that this Court in General Term can hear and determine no chancery cause at first instance, unless it comes here duly certified for such a hearing by the Equity Court. R. S. D. C., Sec. 800.
For the purpose of disposing of the case as we feel obliged to do, we need look no further into the pleadings in the cause before us, and we need refer to the evidence but briefly.
Mr. Burr was called as a witness and testified that. he gave the $1,500 to Mr. Bigelow at the request of his, Burr’s, wife, to be invested for himself and his wife, and he adds: “ The fact is the money was part of my wife’s patrimony. It was hers really, but she asked me to give Frank (Mr. Bigelow) a check to invest some money for her.” “The greater part of it was that money that she had derived from her father’s estate.”
The check referred to by Mr. Burr is indorsed as follows: “ This sum was handed to Mr. B. F. Bigelow for the purpose of enabling him to invest it for Mrs. T. A. Burr, which he has done to our entire satisfaction. (Signed) T. S. Burr.”
*351 In view of this testimony is it not very plain that Mr. Burr cannot properly ask for a decree declaring that these certificates and this stock belong and shall be delivered to him?
Now, how stands the case of the bank ? Its bill is in no sense, and is not claimed to be, a creditor’s bill; indeed, the judgment debtor is not made a party. It is framed upon the theory that it has a lien on the certificates or on the stock or on both by virtue of the seizure by the marshal on the writ of attachment. In our opinion such seizure and possession gave it no lien. The seizure itself was unlawful and by it nothing was obtained but the manual possession of the certificates, and we doubt if the bank should be permitted to assert even manual possession so obtained.
Besides, there is evidence in the case fairly tending to show that it has the money of Mrs. Burr that paid for these stocks, and that the equitable title thereto was all the time in her.
It is not improbable that she may, by her conduct, or by her silence, be estopped from asserting title, but she is not a party. She has not been heard, and we cannot determine even that question .in her absence. Again, it is urged by counsel for the bank, that Duncanson took the conveyance of the real estate from Mrs. Bigelow, to which he after-wards perfected title at a fixed price; while on the part of Duncanson it is insisted that there was no price agreed upon, and that he perfected title legitimately and now actually owns the property. But how can this question be settled without the presence of Mrs. Bigelow ?
At any rate the bank having no lien to enforce, not being here with the creditor’s bill, the evidence tending as it does to show Mrs. Burr’s interest in the stock, no relief seems possible upon the pleadings as we find them.
Had Bigelow been impleaded, and an issue made which would have entitled the bank to reach his general equitable *352 assets, if any, which remained in the hands of Mr. Duncan-son, there would still seem to be a difficulty about making a decree determining the ownership and price of such real estate in the absence of Mrs. Bigelow.
Lastly, what shall be done with the bill of Mr. Duncan-son? It prays for the delivery of the stock certificates to him, for their cancellation, and for the issue of new ones to himself.
Manifestly this decree cannot be, made as the cause now stands, until Mrs. Burr shall-be impleaded. We have, already said all we need to as to the status of Mrs. Bigelow.
In short it seems to us impossible to grant any relief in this cause, as we find it presented.
Possibly, however, the parties or some of them may desire to amend their pleadings, and bring before the court other additional parties.
In that view we will remand the cause to the court below where the application for leave to amend and amendments may be made as shall be there permitted.